# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MILAGROS CARABALLO, | CASE NO. 1:14-cv-00647-CCC-GBC |
| Plaintiff, | (CHIEF JUDGE CONNER) |
| v. | (MAGISTRATE JUDGE COHN) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO VACATE THE DECISION OF THE COMMISSIONER AND REMAND FOR FURTHER PROCEEDINGS |
| Defendant. | |
| | Docs. 1, 10, 11, 15, 16, 17 |

## REPORT AND RECOMMENDATION

### I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Milagros Caraballo for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). The administrative law judge ("ALJ") failed to acknowledge third-party observations from state agency employees and Plaintiff's daughter-in-law. These observations corroborated Plaintiff's claims and her treating physician's opinion, both of which the ALJ rejected. Third Circuit precedent requires the Court to remand for the ALJ to consider these third-party

statements in the first instance unless they are overwhelmed by countervailing evidence. Here, these claims are corroborated by Plaintiff's treating physician's opinion (and each other) and are not overwhelmed by countervailing evidence. As a result, the Court recommends that Plaintiff's appeal be granted, the decision of the Commissioner be vacated, and the matter be remanded for further proceedings.

## II.    Procedural Background

On January 12, 2011, Plaintiff filed an application for DIB and SSI under the Act. (Tr. 144-56). On May 25, 2011, the Bureau of Disability Determination denied these applications (Tr. 55-67), and Plaintiff filed a request for a hearing on July 11, 2011.   (Tr. 68-69). On September 20, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 34-54).  On October 11, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 16-33). On November 15, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 14-15), which the Appeals Council denied on February 12, 2014, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-7).

On April 4, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On July 8, 2014, the Commissioner filed an answer and administrative transcript of

proceedings. (Docs. 10, 11). On September 22, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 15). On October 24, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 16). On October 28, 2014, Plaintiff filed a brief in reply. (Doc. 17). On November 5, 2014, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

## III.    Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and requires only "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## IV.    Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520,

416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## V. Relevant Facts in the Record

Plaintiff was born on November 15, 1958 and was classified by the regulations as a person closely approaching advanced age through the date of the ALJ decision. 20 C.F.R. § 404.1563. (Tr. 31). Plaintiff has a limited education and past relevant work as a cashier, cleaner, salesperson, and production assembler. (Tr. 31). Plaintiff asserts disability beginning in August of 2008. (Tr. 24, 404-05).

In July of 2008, Plaintiff presented to the emergency room for low back pain. (Tr. 362). She reported her pain began three days earlier when she was bending. (Tr. 362). Examination was normal. (Tr. 363). She was provided with pain medication and felt better. (Tr. 362-63). Plaintiff's blood pressure was

elevated. (Tr. 364). X-rays of Plaintiff's lumbar spine indicated degenerative disc disease at L2-3 and L5-S1. (Tr. 263). She was discharged home and instructed to follow-up (Tr. 364).

In July of 2009, Plaintiff presented to the emergency room for neck and arm pain and shortness of breath. (Tr. 367). She had not "recently seen a physician." (Tr. 367). She was diagnosed with an anxiety reaction and hypertension and instructed to make an appointment with the medicine clinic as soon as possible. (Tr. 367). She returned to baseline after receiving medication, and discharged the same day. (Tr. 367, 369).

In May of 2010, Plaintiff presented to the emergency room for a cough and congestion. (Tr. 376). Plaintiff had not "recently seen a physician, and [did] not have an established primary care provider." (Tr. 377). She was obese, uncomfortable, and reported a headache. (Tr. 380). Plaintiff was discharged home with diagnoses of asthma, bronchitis, and pneumonia. (Tr. 378).

In September of 2010, Plaintiff presented as a new patient at Hamilton Health Center in Harrisburg, Pennsylvania. (Tr. 268-73). She had moved to the area five months earlier. *Id*. She reported asthma, hypertension, and back pain. (Tr. 272). She also reported pain in her left leg, knee, and ankle. (Tr. 271). On September 27, 2010, X-rays indicated mild osteoarthritis, mild degenerative joint disease in her right knee and left ankle, and degenerative disc disease at L5-S1

with mild hypertrophic spurring throughout the lumbar spine and disc space narrowing at L5-S1. (Tr. 274). Plaintiff was assessed to have osteoarthritis in her lumbar spine, knee, and ankle, asthma, and hypertension. (Tr. 270).

On December 3, 2010, treating physician Dr. Szada certified to the Pennsylvania Department of Public Welfare that Plaintiff was permanently disabled and a candidate for benefits under the Act. (Tr. 280). She cited Plaintiff's chronic back pain. (Tr. 280).

On February 1, 2011, Plaintiff had a face-to-face interview with a state agency employee to complete her application for benefits. (Tr. 172). The interviewer observed difficulty with concentrating, answering, sitting, standing, walking, and seeing. (Tr. 172). Notes indicate that:

> The claimant was friendly and cooperative. She was very emotional and tearful today. She was very anxious. She moved about in her seat, changing positions several times. She had difficulty concentrating and would become upset would she could not remember things. She was dressed casually, somewhat untidy in her appearance, but her dress was appropriate for the season. She was wearing glasses to read. She had great difficulty getting up from her seat. She walked away slowly and appeared to be experiencing some pain.

(Tr. 172).

On February 14, 2011, Plaintiff completed a function report with the help of another individual. (Tr. 217). She reported problems lifting, squatting, bending, reaching, walking, sitting, kneeling, hearing, climbing stairs, memory, completing tasks, concentration, understanding, following instructions, using her hands, and

functioning in a large group. (Tr. 215). She indicated that she could walk only one block. (Tr. 215). She reported unusual fears and anxiety. (Tr. 216). She reported that she spends her day reading, watching television, and goes to church three days a week. (Tr. 214). She indicated that she uses transportation, but cannot go out alone because of her anxiety. (Tr. 213). She reported that she shops in stores twice a month for no more than an hour. (Tr. 213). She reported that she could cook meals for up to an hour and clean for up to forty five minutes, but her family helped with household chores. (Tr. 212). She reported needing reminders to take care of personal care and medications. (Tr. 212). She indicated problems with personal care, specifically dressing, caring for her hair, bathing, and shaving. (Tr. 211).

On March 21, 2011, X-rays of Plaintiff's lumbar spine indicated "moderate degenerative changes of the lumbar spine," specifically "moderate disc narrowing and osteophyte formation." (Tr. 290).

On March 21, 2011, Plaintiff presented to Dr. Bruce Goodman, M.D., for a consultative examination. (Tr. 285). She was accompanied by an interpreter. (Tr. 285). She was living in a one-bedroom apartment by herself and reported being able to cook, clean, and grocery shop. (Tr. 285). Physical examination indicated that she was 5 feet 3 inches and weighed 245 pounds. (Tr. 286). Gait was normal, but she was "very tender to light palpation" and her range of motion was decreased

in her spine. (Tr. 286). She was "suggestive of having a bilaterally Patrick's finding over the sacroiliac joints with testing" but examination was otherwise normal. (Tr. 286). He opined that she could stand or walk for three to four hours in an eight-hour workday and could sit for eight hours with an option to sit or stand. (Tr. 286). He opined that she could never kneel, stoop, crouch, balance, or climb. (Tr. 288).

In May of 2011, Plaintiff had a consultative psychiatric evaluation with Dr. Louis Laguna, Ph.D. (Tr. 297-303). Dr. Laguana assessed Plaintiff to have a global assessment of functioning ("GAF") of 50. (Tr. 301). Dr. Laguana's assessment of her thought processes indicated "her productivity, continuity and language were intact. She did appear to have some difficulties concentrating at times." (Tr. 300). Dr. Laguana also noted that there was "trouble with concentration, and I believe that there is some concentration impairment probably related to her chronic anxiety." (Tr. 300). She was "cooperative" during his examination until he "asked her about traumas," when she became "upset." (Tr. 299). He diagnosed her with generalized anxiety disorder. (Tr. 301). He opined that she had some slight work-related functional limitations as a result of her concentration difficulties. (Tr. 303). On May 25, 2011, Dr. Michal Suminski, Ph.D., reviewed Plaintiff's file and opined that her mental impairment was not severe. (Tr. 307).

In May of 2011, Plaintiff began reporting abdominal pain and rectal bleeding. (Tr. 328, 336, 350, 354-56). She was referred to specialists. (Tr. 336-39).

In December of 2011, providers diagnosed her with gastritis and treated her with antibiotics. (Tr. 328). On follow-up in January of 2012, Plaintiff indicated that she was "not too reliable at remembering to take pills. Her stomach [was] doing better with less epigastric pain." (Tr. 330). Providers wrote out a schedule for her medications and instructed her to follow-up in six weeks. (Tr. 330).

In October of 2011, Plaintiff underwent a sleep study for "loud snoring [and] excessive daytime tiredness/sleepiness." (Tr. 340). It indicated "prolonged sleep latency. Poor sleep efficiency associated with multiple awakening, frequent arousals." (Tr. 340).

On December 7, 2011, Dr. Szada certified to the Pennsylvania Department of Public Welfare that Plaintiff was permanently disabled as a result of diabetes, gastrointestinal impairments, and anxiety. (Tr. 385).

In May of 2012, Plaintiff presented to the Harrisburg Hospital with bronchitis. (Tr. 393). Musculoskeletal examination indicated tenderness in her neck, but was otherwise normal. (Tr. 396). She also reported "indigestion" up into her throat. (Tr. 395). She was discharged with medications the same day. (Tr. 389).

In August of 2012, Lisa Owens submitted a statement. (Tr. 241). She indicated that she was engaged to Plaintiff's son. (Tr. 241). She reported she went to Plaintiff's house and helped her every day. (Tr. 241). She reported that, "on her really bad days," she had to help Plaintiff get out of bed. (Tr. 241). She reported

that she shaved her legs, cooked, cleaned, took out trash, and reminded her to take her medication. (Tr. 241). She reported Plaintiff used a wheel chair when she took her to the grocery store, had anxiety attacks, and could not be in large group settings. (Tr. 241).

In September of 2012, Dr. Szada authored a medical opinion. (Tr. 404-05). She opined that Plaintiff could stand and walk for two hours out of an eight-hour workday and sit for four hours out of an eight-hour workday. (Tr. 404). She opined that she could sit, stand, or walk for only ten minutes at a time before needing to change position. (Tr. 404). She opined that Plaintiff could never twist, stoop, squat, or climb and would require unscheduled rest breaks beyond standard rest breaks. (Tr. 404). She opined Plaintiff would be absent more than twice per month. (Tr. 405). She opined that these limitations had been present since August 12, 2008. (Tr. 405). She also assessed Plaintiff's mental limitations, and indicated that she would have moderate limitations in completing a normal workday or workweek and handling quotas or production requirements. (Tr. 401).

On September 20, 2012, Plaintiff appeared and testified before an ALJ. (Tr. 36). She testified that she lives alone, but her daughter-in-law helps her every day. (Tr. 40). She indicated that she did not perform most of the household chores or have a driver's license, and that her "daughter-in-law takes [her] places." (Tr. 40). She testified to difficulties bending, climbing stairs, walking, and sitting. (Tr. 41).

She indicated that her daughter-in-law helps her shower and do her hair. (Tr. 43). She indicated that she did not go anywhere except for church. (Tr. 43).

On October 11, 2012, the ALJ issued the decision. (Tr. 33). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 12, 2008, the alleged onset date. (Tr. 12). At step two, the ALJ found that Plaintiff's Hypertension, Obesity, Gastritis, Gastroesophageal Reflux Disease, Back Pain, and Anxiety were medically determinable and severe. (Tr. 24). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 25). The ALJ found that Plaintiff had the RFC to perform

> [L]ess than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that the claimant is able to stand/walk for four hours in an eight-hour workday and sit for eight hours in an eight-hour workday, if given the option to alternate between sitting and standing positions at will. The claimant is capable of occasional bending and stair climbing, but never any balancing, stooping, kneeling, crouching, or climbing of ladders. She must avoid concentrated exposure to heights and moving machinery. Due to her mental impairments, the claimant is limited to simple, routine, repetitive tasks.

(Tr. 27). At step four, the ALJ found that Plaintiff could not perform past relevant work. (Tr. 31). At step five, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 32). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 32).

## VI.    Plaintiff Allegations of Error

### A.    Third-Party Evidence

Plaintiff asserts that the ALJ erred in failing to address the third-party statement of her Ms. Owens, her son's fiancée . (Pl. Brief at 14-17) (citing *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 122 (3d Cir. 2000); *Bunch v. Astrue*, 2011 U.S. Dist. LEXIS 139764 at *27-28 (M.D.Pa. Nov. 21, 2011); *Perez v. Astrue*, 2011 U.S. Dist. LEXIS 155230 at *12-16 (M.D. Pa. May 27, 2011); *Oldenburgh v. Astrue*, 2009 U.S. Dist. LEXIS 24867 *26 (M.D.Pa. Mar. 26, 2009). Plaintiff also asserts the ALJ erred in failing to mention observations by the state agency employee that she was very emotional, tearful, and anxious, moved about in her seat and had great difficulty getting up, had difficulty concentrating and became upset when she could not remember things, and appeared to be in pain. (Pl. Brief at 17) (citing Social Security Ruling 96-7p (an ALJ "must" consider any observations about a claimant recorded by Social Security employees during interviews); *Frank-Digiovanni v. Colvin*, 2014 U.S. Dist. LEXIS 70075 at 9-11 (M.D. Pa. May 22, 2014); *Peak v. Astrue*, 2011 U.S. Dist. LEXIS 152837 at *26 (M.D. Pa. Jan. 24, 2011)). Defendant responds that the ALJ is entitled to overlook evidence that is "neither pertinent, relevant nor probative." (Def. Brief at 16) (quoting *Johnson v. Comm 'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008)).

In *Burnett,* the Third Circuit rejected an argument similar to Defendant's argument here:

> Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him. *See Van Horn v.*

*Schweiker,* 717 F.2d 871, 873 (3d Cir.1983); *Cotter,* 642 F.2d at 707. Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, *see Hartranft,* 181 F.3d at 362 (citing 20 C.F.R. § 404.1529), the ALJ must still explain why he is rejecting the testimony. *See Van Horn,* 717 F.2d at 873. In *Van Horn,* this Court set aside an ALJ's finding because he failed to explain why he rejected certain non-medical testimony. *See* 717 F.2d at 873. In this case, the ALJ explained he rejected Burnett's testimony regarding the extent of her pain because he determined it was not supported by the objective medical evidence. However, the ALJ failed to mention the testimony of Burnett's husband, George Burnett, and her neighbor, Earl Sherman. On appeal, <u>the Commissioner contends the ALJ did not need to mention their testimony because it "added nothing more than stating [Burnett's] testimony was truthful." Commissioner's Brief at 21. This argument lacks merit because the ALJ made a credibility determination regarding Burnett, and these witnesses were there to bolster her credibility.</u> R. 17 ("claimant's allegations of disability made at hearing are unsubstantiated"). In *Van Horn,* we stated we expect the ALJ to address the testimony of such additional witnesses. On remand, the ALJ must address the testimony of George Burnett and Earl Sherman.

*Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 122 (3d Cir. 2000) (emphasis added).

Admittedly, "[i]n some circumstances, a piece of evidence can be so lacking in probative value, or so overwhelmed by countervailing evidence, that it can be implicitly rejected without explanation." *McConnell v. Astrue*, CIV.A. 3:09-44, 2010 WL 2925053, at *9 (W.D. Pa. July 20, 2010) (citing *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 203–205 (3d Cir.2008)). Here, Defendant asserts that Ms. Owens' report with regard to Plaintiff's physical abilities was overwhelmed by countervailing evidence because "in May 2012, Dr. Goodman observed that

Plaintiff had independent toe and heel walking… no evidence of muscle fasciculation, atrophy, or weakness in her lower extremities (Tr. 286)." (Def. Brief at 17). Defendants asserts that "[w]hen Plaintiff visited Harrisburg Hospital on May 8, 2012, an examining physician made observations consistent with Dr. Goodman, observing that Plaintiff walked with a normal gait and possessed normal deep tendon reflexes (Tr. 396)."

These two treatment records do not constitute "overwhelming" countervailing evidence. *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 203–205 (3d Cir.2008). Dr. Szada, Plaintiff's treating source physician, authored three medical opinions that corroborate Ms. Owens' report. (Tr. 280, 387, 405-06). Ms. Owens' report is also consistent with Dr. Goodman's assessment of Plaintiff's ability to stand or walk and perform postural movements. (Tr. 288). Defendant does not mention that Dr. Goodman observed limited range of motion and significant tenderness, and  opined that she could stand or walk for three to four hours in an eight-hour workday and could never kneel, stoop, crouch, balance, or climb. (Tr. 288). Imaging studies consistently documented degenerative changes in her lumbar spine, knees, and ankles. *Supra.*

Defendant asserts that Ms. Owens' report with regard to Plaintiff's mental abilities was overwhelmed by countervailing evidence because, "on May 16, 2011, Dr. Laguana observed that Plaintiff's thought processes, productivity, continuity,

[memory] and language were intact (Tr. 300)." (Def. Brief at 17). Defendant also notes that Plaintiff can use public transportation, go to church, and, "[w]hen Plaintiff visited Harrisburg Hospital on May 8, 2012, the evaluating medical source made observations similar to those of Dr. Laguana, noting that Plaintiff displayed a normal affect, showed normal judgment, and possessed normal concentration (Tr. 396)." (Def. Brief at 17).

Again, these two treatment records do not constitute "overwhelming" countervailing evidence. *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 203–205 (3d Cir.2008). Dr. Laguana assessed Plaintiff to have a GAF of fifty.(Tr. 300). Dr. Laguana's full assessment of her thought processes indicated "her productivity, continuity and language were intact. She did appear to have some difficulties concentrating at times." (Tr. 300). Dr. Laguana also noted that there was "trouble with concentration, and I believe that there is some concentration impairment probably related to her chronic anxiety." (Tr. 300). She was "cooperative" during his examination until her "asked her about traumas," when she became "upset." (Tr. 299). Moreover, the ALJ does not note the state agency employee's observations, which corroborate Ms. Owens' report and Plaintiff's claims. The state agency employee observed that she was very emotional, tearful, and anxious, moved about in her seat and had great difficulty getting up, had difficulty

concentrating and became upset when she could not remember things, and appeared to be in pain. (Tr. 172).

*Burnett* plainly states that the Third Circuit "expect[s] the ALJ to address the testimony of such additional witnesses." *Id.* at 122. The ALJ did not address Ms. Owens' report which, as discussed above, was probative evidence that was not overwhelmed by countervailing evidence. Consequently, the ALJ's failure to address Ms. Owens' report precludes meaningful review of his credibility assessment. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504-05 (3d Cir. 2009) ("The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review") (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000); *Liszka v. Colvin*, CIV.A. 3:14-0280, 2015 WL 3771238, at *3-4 (M.D. Pa. June 17, 2015) (Overruling Defendant's objections that Report and Recommendation to remand was based on an "overly broad application of *Burnett*," noting that "[t]he language of *Burnett* is broad") (citing *Frank–Digovanni v. Colvin, 2014 WL 2177090 (M.D.Pa. May 22, 2014* ) (this court remanded case since ALJ did not consider the statement of plaintiff's husband)); *see also Maellaro v. Colvin*, 3:12-CV-01560, 2014 WL 2770717, at *12 (M.D. Pa. June 18, 2014) ("The Commissioner encourages claimants to submit third party statements, and recognizes the relevance of statements from individuals who know the claimant.

*See* 20 C.F.R. §§ 416.912, 416.913 and 416.929; SSR 96–7p and 96–8p. Third party statements can support a claimant's credibility, and help evaluate the claimant's impairments, symptoms, limitations, functioning, and activities of daily living. *Id.; see also, Burnett,* 220 F.3d at 122.").

As the Third Circuit has explained:

> [T]he Secretary must "explicitly" weigh all relevant, probative and available evidence. *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir.1979); *see also Brewster v. Heckler,* 786 F.2d 581, 584 (3d Cir.1986); *Cotter,* 642 F.2d at 705. The Secretary must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. *Brewster,* 786 F.2d at 585. The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects. *Stewart v. Secretary of H.E.W.,* 714 F.2d 287, 290 (3d Cir.1983)

*Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). Consequently, the Court recommends remand for the ALJ to appropriately assess the statements of Ms. Owens and the state agency employees.

The Court notes that it is unclear whether the ALJ was entitled to classify Plaintiff's exertional category as "light," given that she could only stand or walk for four hours. *See* SSR 00-4p ("SSA adjudicators may not rely on evidence provided by a VE, VS, or other reliable source of occupational information if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies or definitions…We classify jobs as sedentary, light, medium, heavy and very heavy (20 CFR 404.1567 and 416.967). These terms have

the same meaning as they have in the exertional classifications noted in the DOT. Although there may be a reason for classifying the exertional demands of an occupation (as generally performed) differently than the DOT (e.g., based on other reliable occupational information), the regulatory definitions of exertional levels are controlling. For example, if all available evidence (including VE testimony) establishes that the exertional demands of an occupation meet the regulatory definition of 'medium' work (20 CFR 404.1567 and 416.967), the adjudicator may not rely on VE testimony that the occupation is 'light' work."). Here, if Plaintiff's exertional level was only "sedentary," she would be disabled by application of the medical-vocational rules. See 20 C.F.R. § Pt. 404, Subpt. P, App. 2. Although Plaintiff had exertional and non-exertional limitations, the medical-vocational rules must still be consulted to determine whether Plaintiff's exertional limitations alone mandate a finding of disability. *Id.* However, Plaintiff did not raise this issue and it was not briefed by the parties. Moreover, the Court recommends remand on other grounds. Because the Court recommends remand on these grounds, it declines to address Plaintiff's other allegations of error. A remand may produce different results on these claims, making discussion of them moot. *See LaSalle v. Comm'r of Soc. Sec.*, No. CIV.A. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011).

### VII.    Conclusion

The undersigned recommends that the Court vacate the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1.     The decision of the Commissioner of Social Security denying Plaintiff benefits under the Act be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence.

2.     The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: September 30, 2015                          <u>        s/Gerald B. Cohn        </u>
                                              GERALD B. COHN
                              UNITED STATES MAGISTRATE JUDGE